UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-Cv-23134-SEITZ
          (07-Cr-20073-SEITZ)
MAGISTRATE JUDGE P. A. WHITE

EDDY JEAN,                   :

          Movant,           :

                            :           REPORT OF
v.                          :      MAGISTRATE JUDGE

UNITED STATES OF AMERICA,   :

          Respondent.       :
_____

I.   Introduction

     This matter is before this Court on the movant's motion to
vacate, in which he attacks his convictions and sentences for
importation of cocaine and possession with intent to distribute
cocaine, entered following a jury verdict in case no. 07-Cr-20073-
Seitz.

     This Cause has been referred to the undersigned for
consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and
Rules 8 and 10 of the Rules Governing Section 2255 Cases in the
United States District Courts.

     For its consideration of this motion with supporting
memorandum and affidavit (Cv-DE#1-3), the Court has the response of
the government to an order to show cause (Cv-DE#9), and the
movant's reply (Cv-DE#9), the Presentence Investigation Report
(PSI), and all pertinent portions of the underlying criminal file.

     Construing the movant's claims liberally as afforded pro se
litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), it
appears the movant raises the following claims:

Claim 1: Ineffective assistance of trial counsel at a pre-trial suppression hearing for failing to call Jean to testify and/or presenting testimony or evidence on his behalf.

Claim 2: Ineffective assistance of trial counsel for failing to present evidence at trial to support Jean's defense that he was duped.

Claim 3: Ineffective assistance of trial counsel for failing to provide conflict-free representation.

Claim 4: Ineffective assistance of appellate counsel for failing to argue that the government's misconduct deprived Jean of a fair trial.

## II.   Factual and Procedural History

In United States v. Jean, 285 Fed. Appx. 651, 2008 WL 2766147 (11 Cir. July 17, 2008), the Eleventh Circuit summarized the facts in Jean's underlying criminal case as follows:

On January 24, 2007, Jean arrived at Miami International Airport aboard an Air France flight from Port-au-Prince, Haiti. He had a carry on bag, and a Customs officer viewing it under the x-ray machine noticed that the contents of the bag were unusually dense. An examination of the bag revealed four wooden plaques containing cocaine powder.

Jean was arrested. Following his arrest, Agent Perez questioned him-after advising him of his Miranda rights and obtaining Jean's waiver of them. Jean told Perez that he was fluent in Creole, and that he could not read English. He could understand spoken English, however, and, as he spoke to Perez, he showed that he had no difficulty understanding and speaking English. He told Perez that he had bought the plaques from a street vendor. Perez voiced disbelief, so Jean changed his story, claiming that a friend, [Jeanty] Innocent, had introduced him to two individuals who gave him the

2

plaques and told him that they contained drugs inside. He was to deliver the plaques to "Big Dog" in Miami, and agreed to cooperate with the authorities and do that. A controlled delivery, however, proved unsuccessful.

The government filed an indictment against Jean for importation of 500 grams or more of cocaine in violation of 21 U.S.C. § 952(a) (count 1) and possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) (count 2). (Cr DE#9).

Jean moved to suppress his statement on the ground that Agent Perez failed to obtain a knowing, intelligent, and voluntary waiver of his Miranda rights from Jean and, as a result, the statement was not voluntary. (Cr DE# 22). The District Court referred the motion to a magistrate judge for an evidentiary hearing. (Cr DE# 27). During the hearing, the parties disputed whether Agent Perez had properly advised Jean of his Miranda rights, whether Jean understood them, and whether he freely and voluntarily waived his right to remain silent and to submit to questioning. (Cr DE# 58). Agent Perez was the only witness to testify. (Id.) At the close of the hearing, the magistrate judge found that Perez had advised Jean of his Miranda rights in English, that Jean understood them, and that he waived his right to remain silent. (Id.) A subsequent report recommended that the motion to suppress be denied. (Cr DE# 35). Jean filed objections to the report and recommendation (Cr DE# 36) and the United States responded in opposition (Cr DE# 38). The District Court overruled the objections and denied Jean's motion to suppress. (Cr DE# 88, p. 2-4).

Jean proceeded to trial (Cr DE# 83, 88, 93, 94) where a jury found him guilty as charged in the indictment (Cr-DE# 54).

Prior to sentencing, a PSI was prepared which revealed as

3

follows. The counts were grouped together because the offense level was determined largely on the basis of total quantity of the substance, pursuant to U.S.S.G. §3D1.2. (PSI ¶14). Pursuant to U.S.S.G. §2D1.1(a)(3), the base offense was set at level 28 because the offense involved importation and possession with intent to distribute at least 2 kilograms, but less than 3.5 kilograms, of cocaine. (PSI ¶15). The offense level was decreased by two levels because the defendant was a minor participant in the offense, resulting in a total offense level 26. (PSI ¶¶18, 23).

The probation officer next determined that the movant had a total of zero criminal history points, resulting in a criminal history category I. (PSI ¶26). Based on a total base offense level 26 and a criminal history category I, the guideline range was set at 63 to 78 months in prison. (PSI ¶60). Statutorily, the movant faced a minimum of five, and a maximum of forty, years in prison for violating of 21 U.S.C. §960(b)(2)(B) and 841(b)(1)(B). (PSI ¶59). The government filed objections to the PSI wherein it argued that Jean should receive a sentencing enhancement for obstruction of justice because he denied several material facts relating to his drug importation case and because Jean falsely testified at trial about his post-Miranda admissions to Agent Perez. (Cr-DE#154). In an addendum to the PSI, the probation officer deferred the objection to the court.

The movant appeared for sentencing on August 3, 2007. (Cr-DE# 80). After hearing argument from the parties, the court sentenced Jean to 63 months' imprisonment as to counts 1 and 2, to be served concurrently, followed by a four-year term of supervised release. (Cr DE# 66, 67).

Jean filed an appeal wherein he claimed that the district

4

court erred in denying his motion to suppress and claimed the evidence was insufficient to support his convictions. (Cr DE# 69). The Eleventh Circuit affirmed the movant's convictions and sentences in a written, but unpublished opinion. United States v. Jean, 285 Fed. Appx. 651, 2008 WL 2766147 (11 Cir. July 17, 2008). Jean did not file a petition for writ of certiorari in the Supreme Court.

For purposes of the federal, AEDPA one-year limitations period, the movant's conviction became final at the latest on October 15, 2008, ninety days after the judgment was affirmed on direct appeal, when time expired for seeking certiorari review with the Supreme Court.[1] Thus, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than October 15, 2009. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986). This motion to vacate was timely filed less than one year later on October 14, 2009.[2] (Cv-DE#1). The government does not argue that the motion was untimely.

### III. Discussion of the Claims

In this collateral proceeding, the movant raises multiple claims which challenge counsel's effectiveness. Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which

---

[1]     The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United States v. Kaufman, 282 F.3d 1336 (11 Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. Sup.Ct.R. 13; see also, Close v. United States, 336 F.3d 1283 (11 Cir. 2003).

[2]     See Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

is not a favorable standard to the movant. See Massaro v. United States, 538 U.S. 500, 505 (2003). To prevail on a claim of ineffective assistance, a movant must demonstrate both that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant. Chandler v. United States, 218 F.3d 1305, 1312-13 (11 Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001). ; Strickland v. Washington, 466 U.S. 668 (1984). Moreover, a habeas court's review of a claim under the Strickland standard is "doubly deferential." Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009). In deciding whether counsel's performance was deficient, judicial scrutiny is "highly deferential" and requires us to "'indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.'" Id. at 1314 (quoting Strickland v. Washington, 466 U.S. at 689-90.

When assessing a lawyer's performance, "[C]ourts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Chandler v. United States, 218 F.3d 1305 (11 Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. denied, 537 U.S. 812 (2002), quoting, Strickland v. Washington, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is

not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S. at 698.

The Eleventh Circuit will not "second-guess counsel's strategy." <u>Chandler</u>, 218 F.3d at 1314, n.14. Strategic choices, even those "made after less than complete investigation," are evaluated for their reasonableness and "counsel's reliance on particular lines of defense to the exclusion of others--whether or not he investigated those other defenses--is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." <u>Chandler</u>, 218 F.3d at 1318 (<u>quoting</u> <u>Strickland</u>, 466 U.S. at 690-91).

The courts "are not interested in grading lawyers' performances;" but rather, "are interested in whether the adversarial process at trial...worked adequately." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11 Cir. 1994)(quotation marks omitted). To be unreasonable, the performance must be such that "no competent counsel would have taken the action that [the petitioner's] counsel did take." <u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11 Cir. 2001)(emphasis omitted). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d at 386.

Under the second prong of the test set forth in <u>Strickland</u>, the movant can be said to have been prejudiced by counsel's

performance only if there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Rather, the movant must demonstrate that "there is a reasonable probability that, absent [counsel's] errors, the jury would have had a reasonable doubt regarding [his] guilt." Blackburn v. Foltz, 828 F.2d 1177, 1186 (6 Cir. 1987), cert. den'd, 485 U.S. 970 (1988), see also, Montgomery v. Petersen, 846 F.2d 407, 416 (7 Cir. 1988).

Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Robinson, 64 F.3d 403, 405 (8 Cir. 1995), Ferguson v. United States, 699 F.2d 1071 (11 Cir. 1983), United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979).

> **Claim 1:**  Ineffective assistance of trial counsel at a pre-trial suppression hearing for failing to call Jean to testify and/or presenting testimony or evidence on his behalf.

Jean alleges ineffective assistance of trial counsel for failing to call Jean to testify and/or presenting testimony or evidence on his behalf during the suppression hearing.  In an affidavit Jean filed in support of his motion, he stated that right before the hearing, his counsel advised him not to testify.  (Cv DE# 3, ¶8).  Upon noting that his motion was denied because no evidence was introduced to contradict Agent Perez's testimony, Jean argues that his testimony might have altered the outcome.

8

Accordingly, counsel's failure to elicit his version of events resulted in prejudice. Jean focuses on counsel's failure to call him as a witness and does not proffer the substance of the other evidence/testimony counsel allegedly failed to present. Jean argues that an evidentiary hearing is necessary to resolve this issue.

The government counters that Jean did not establish ineffective assistance of counsel due to his failure to allege that he told counsel that he wanted to testify but was overborne by counsel or that he did not know he was allowed to testify on his behalf. The government further argues that Jean failed to show prejudice because it is unlikely that the magistrate judge would have found him credible in light of the jury's failure to find his testimony believable. With respect to the other witnesses/ evidence, the government correctly counters that Jean's claim fails due to his failure to describe the identity of the witness and/or the substance of the testimony/evidence.

Of course, a criminal defendant has a fundamental constitutional right to testify on his or her own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49-52 (1987); United States v. Teague, 953 F.2d 1525, 1532 (11 Cir. 1992) (en banc). This right is personal to the defendant, and cannot be waived by the trial court or defense counsel. Teague, supra; Brown v. Artuz, 124 F.3d 73, 77-78 (2 Cir. 1997).

In Gomez v. Duncan, 2004 WL 119360 (S.D. N.Y. Jan. 27, 2004), the court noted, "The Supreme Court (and Second Circuit) . . . [have] only dealt with the defendant's personal right to testify *at trial*. The Supreme Court has not decided whether that personal right also extends to pretrial proceedings such as a suppression

9

hearing. Several district court decisions, in this district and elsewhere, have expressed the opinion that a defendant does not have a Constitutional right to testify at a pretrial proceeding."[3] This Court need not decide, however, whether the movant had a constitutional right to testify at the suppression hearing because the claim fails on the merits

The proper vehicle for an argument that a defendant's right to testify was violated by his trial counsel is a claim of ineffective assistance of counsel, which requires analysis under Strickland v. Washington, 466 U.S. 668 (1984). Gallego v. United States,174 F.3d 1196 (11 Cir. 1999)(citing Teague, 953 F.2d at 1534); Brown, 124 F.3d at 79-80; Sexton v. French, 163 F.3d 874, 882 (4 Cir. 1998).

---

[3]    citing, Narvaez v. United States, 97 Civ. 8745, 1998 WL 255429 at *5 n. 6 (S.D.N.Y. May 19, 1998)("While it is well-established that a defendant has a constitutional right, personal to him and not waivable by counsel, to testify at trial, it is not clear that this extends to pretrial hearings.... It seems likely to this Court that the decision to put the defendant on the stand in a pretrial evidentiary hearing has no special constitutional status beyond the right to present evidence on one's own behalf and is thus committed, as are all decisions about which witnesses to call or not call, to trial counsel's professional judgment. The distinction is important because if the defendant has a personal right to testify, the question under the performance prong of Strickland is whether counsel informed the defendant of that right, whereas if there is no such personal right the question becomes the more difficult standard of whether the decision not to call the defendant was within the range of sound professional judgment. Given the disposition of this issue on the prejudice prong, the Court need not decide the issue.") (citation omitted); Hemingway v. Henderson, 754 F. Supp. 296, 302 (E.D.N.Y. 1991) ("If a strategic decision by defense counsel not to seek to suppress a confession may constitute a waiver of the claim that the confession was erroneously admitted, it would seem to follow that a strategic decision not to call the defendant as a witness at a suppression hearing, even when not made in full consultation with the defendant, should have a similar effect.... There is a difference between testifying at trial that involves a determination of guilt or innocence and testifying at a preliminary hearing the purpose of which is to keep evidence from 'the trier of guilt or innocence for reasons wholly apart from enhancing the reliability of verdicts.'.... Accordingly, where a defendant did not testify at a suppression hearing because he relied on the advice of counsel, the issue is best approached in terms of whether the advice was reasonable and whether, if the advice had been different, it would have affected the outcome of the hearing."); United States v. Stewart, 51 F. Supp. 2d 1147, 1158 n. 4 (D. Kan. 1999) ("Like the court in Narvaez v. United States, this court expresses no opinion on the issue of whether the defendant or his counsel controls the decision to testify at a pretrial hearing ..."), aff'd, Nos. 99-3159, 99-3270, 215 F.3d 1338 (table) (10th Cir. June 2, 2000).

United States v. Tavares, 100 F.3d 995, 998 (D.C. Cir.1996).

In Teague, supra, the Eleventh Circuit held that an attorney who refused to accept the defendant's decision to testify, or failed to inform him of his absolute right to testify "would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected," and counsel's action would not have fallen "within the range of competence demanded of attorneys in criminal cases." 953 F.2d at 1534 (quoting Strickland v. Washington, supra).  The Teague court, having the benefit of testimony from an evidentiary hearing on the defendant's motion for a new trial, found that counsel's performance had not been deficient, and therefore did not address the prejudice prong of the Strickland analysis. 953 F.2d at 1535.

Not all assertions of ineffective assistance of counsel with regard to the right to testify or not testify warrant evidentiary hearing. Underwood v. Clark, 939 F.2d 473 at 476 (7 Cir. 1991) (barebones assertion by a defendant is insufficient to require a hearing on a claim that the right to testify was denied, greater particularity and some substantiation such as an affidavit from the lawyer who allegedly forbade his client to testify are necessary to give the claim sufficient credibility to warrant a further investment of judicial resources); Siciliano v. Vose, 834 F.2d 29 (1 Cir.1987)(defendant's conclusory allegation that his attorney refused to allow him to testify in his own behalf was insufficient to entitle him to hearing on issue of whether his right to testify was violated); Passos-Paternina v. United States, 12 F. Supp. 231, 239-40 (D. Puerto Rico 1998).

The Fourth Circuit has held that a hearing was not necessary where the defendant suffered no prejudice under Strickland, supra,

because "his testimony at trial only helped his case..." Sexton v. French, 163 F.3d 874, 883 (4 Cir. 1998), cert. denied, 120 S.Ct. 139 (1999). As stated, the Eleventh Circuit has not determined whether a conclusory allegation is sufficient to warrant further inquiry, such as the grant of a hearing. See, e.g. Brown, 124 F3.d at 80. However, it is clear that a defendant must prove prejudice in order to be entitled to relief on such a claim. See Teague, supra.

In order to satisfy the prejudice prong, the movant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, supra. at 394. In other words, the movant must prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687; see also, Lockhart v. Fretwell, 506 U.S. 364, 369 (1993), citing, Kimmelman v. Morrison, 477 U.S. 365 (1986)("The essence of an ineffective assistance of counsel claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."). In Fretwell, the Supreme Court also concluded that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Fretwell, supra at 369, citing, United States v. Cronic, 466 U.S. 648, 653 (1984). The touchstone of an ineffective-assistance claim is the fairness of the adversary proceeding, and "in judging prejudice and the likelihood of a different outcome, '[a] defendant has no entitlement to the luck of

a lawless decisionmaker.'" <u>Fretwell</u>, <u>supra</u> at 370, <u>citing</u>, <u>Strickland</u>, <u>supra</u> at 695.

In this case, it is first noted that Jean fails to allege that his counsel refused to accept his decision to testify and/or failed to inform Jean that he had the right to testify. <u>See</u> <u>Teague</u>. Instead Jean simply asserts that at the suppression hearing, "AFPD Brian Stekloff represented me and advised me not to testify in my own defense." (Cv DE# 3, ¶8). In addition, Jean's claim that counsel failed and/or refused to allow him to testify on his own behalf at the suppression hearings is self-serving and not supported by any affidavit from counsel.[4] Moreover, counsel could have well believed that the movant's version of the events was not credible or too suspect to put the movant on the stand. Thus, counsel's tactical decision to forego calling the movant as a witness at the suppression hearing should not be second-guessed in this collateral proceeding. It is well settled under federal law that tactical or strategic choices cannot support a collateral claim of ineffective assistance. <u>McNeal v. Wainwright</u>, 722 F.2d 674 (11 Cir., 1984); <u>United States v. Costa</u>, 691 F.2d 1358 (11 Cir. 1982); <u>see</u> <u>e.g.</u>, <u>United States v. Swanson</u>, 943 F.2d 1070, 1075-76 (9 Cir. 1991)("In some cases a trial attorney may find it

---

[4]    <u>See</u>, <u>e.g.</u>, <u>White v. United States</u>, 99 Ci. 11809, 2000 WL 546426 at *5 (S.D.N.Y. 2000)(Where petitioner asserted that held his counsel that he wanted to testify, but counsel rested the defenses case without calling petitioner, court found that petitioner's affidavit "fail[ed] to substantiate his allegation that trial counsel's performance was deficient." "'[T]he defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.'", <u>quoting</u>, <u>United States v. Castillo</u>, 14 F.3d 802, 805 (2nd Cir.), <u>cert. den'd</u>, 513 U.S. 829 (1994); <u>see also</u>, <u>e.g.</u>, <u>Jeffries v. United States</u>, 234 F.3d 1268 (6th Cir. 2000)(table)(Petitioner "has not shown that counsel's performance was deficient as he merely made conclusory, self-serving allegations that his attorney refused to let him take the stand."); <u>Torres v. Stinson</u>, 2000 WL 1919916 at *5 (E.D. N.Y. 2000)("A barebones assertion by a defendant that his counsel failed to inform him of his rights is insufficient to establish an ineffective assistance of counsel claim under <u>Strickland</u>.").

advantageous to his clients' interests to concede certain elements of an offense or his guilt of one of certain charges."); United States v. Simone, 931 F.2d 1186 (7 Cir. 1991)(admission that defendant was drug dealer in combination with vigorous defense of more serious charge recognized as "logical" and not ineffective assistance where inculpating evidence was undisputed).

In a written motion to suppress, Jean's trial counsel argued that Perez read Jean his Miranda rights and obtained a waiver half way through the interrogation, therefore, all pre-Miranda statements should be suppressed.  (Cr DE# 22).  At the outset of the suppression hearing, defense counsel also argued that the waiver was involuntary because there was no Creole interpreter present to translate for Jean, who lacked the ability to completely understand English. (Cr DE# 58, p. 10-12).

Agent Perez testified as follows at the suppression hearing. On January 24, 2007, Perez was working in his capacity as a special agent for Immigration and Customs Enforcement (ICE) at Miami International Airport.  (Id. at 14). He was contacted by officers from Customs Border Protection (CBP) who told him that they had in custody an individual who had entered the country with four wooden plaques containing a substance which field-tested positive for cocaine.  (Id. at 15).  The CBP officer informed Perez that Jean claimed he bought the plaques from a street vendor in Haiti.  (Id. at 18). Perez made contact with Jean at around 9:00 p.m.  (Id. at 17).  Perez asked Jean in English whether he spoke English and Jean answered "yes."  (Id. at 19).  When Perez asked whether Jean could read English, Jean answered, "I don't." (Id. at 19).  Perez read Jean his Miranda rights from a printed form.  After reading each right, Perez inquired whether Jean understood the right and Jean answered "yes" each time.  (Id. at 20).  After confirming that Jean

14

understood his rights, Perez read the waiver portion of the form and immediately obtained a verbal waiver of his rights from Jean. (Id. at 23).  Shortly thereafter, Jean provided a written waiver by signing the form.  (Id. at 23). At no time did Jean appear to have any difficulty understanding Perez.  (Id. at 20, 23).

After obtaining Jean's waiver, Perez asked Jean where he got the plaques.  (Cr DE# 58, p. 27). Jean initially said he bought them from a street vender.  (Id. at 27).  However, when Perez expressed disbelief in Jean's story, Jean admitted that his friend Jeanty Innocent, gave him the plaques in Haiti and told him to deliver them to an individual called "Big Dog" in Miami.  (Id. at 28). Jean admitted he knew the plaques contained drugs and that Innocent told Jean to claim the plaques were a gift for his mother if questioned by the authorities.  (Id. at 29).  Throughout the questioning, both Perez and Jean communicated in English.  (Id. at 29).  Perez next asked whether Jean would take part in a controlled delivery by waiting outside for Big Dog to pick him up.  Jean agreed and waited outside for approximately 45 minutes, however, no one came to pick him up.

On direct examination at the suppression hearing, Perez testified that the Miranda form contained a space for the time Perez made contact with Jean and a space for the time the waiver was executed.  (Id. at 30).  Perez explained that the time written in the latter space was incorrect. Around 11:00 p.m. when Perez was completing his paperwork, he noticed that the space for the time the form was signed had been left blank.  He estimated that Jean had signed the form at around 10:00 p.m. and, accordingly, wrote 10:00 p.m. in the blank space.  (Id. at 31).  Jean actually signed the form at around 9:30 p.m. and answered Perez's questions from 9:30 p.m. until approximately 9:50 p.m.  (Id. at 32).  On cross-

15

examination, defense counsel questioned Perez at length regarding the timing of the waiver.  Perez testified that regardless of his mistakes, he was "100 percent" certain that Jean provided a verbal and written waiver of his <u>Miranda</u> rights before making his statement.  (<u>Id.</u> at 43).

With respect to the language issue, defense counsel presented the customs form completed by Jean while on the airplane and noted that he completed the Creole version of the form.  (<u>Id.</u> at 45).

At the close of the hearing, defense counsel argued that Perez's mistakes, to which he admitted, tainted his entire testimony.  (Cr DE# 58, p. 64). The government countered that simply because Perez made mistakes, it did not follow that he was lying on the stand about when he obtained Jean's waiver. (<u>Id.</u> at 66).

The magistrate judge explained on the record that he found Perez's testimony credible.  Specifically, the judge believed that Perez and Jean communicated entirely in English thereby illustrating that Jean understood English and believed that Perez read Jean his <u>Miranda</u> rights and obtained a verbal and written waiver of those rights before the questioning began. (<u>Id.</u> at 72-74).  In a written report, the judge recommended the motion to suppress be denied because "the government met its obligation to establish, by a preponderance of the evidence, that the Defendant was advised of his <u>Miranda</u> rights prior to interrogation, and that the Defendant sufficiently understood those rights, such that his waiver of those rights was voluntary, knowing, and intelligent." (Cr DE# 35, p. 2).  At the outset of trial, upon noting that Agent Perez was the only witness to testify at the suppression hearing, the district court agreed with the magistrate judge's

recommendation and overruled Jean's objections to the report. (Cr DE# 88, p. 2-4).

In his §2255 motion, Jean does not proffer the substance of the testimony trial counsel allegedly failed to elicit from him at the suppression hearing.  However, at trial, Jean testified on his behalf and contradicted Perez's version of events.  (Cr DE# 82, p. 39).  Specifically, he testified that after the interrogation and controlled delivery, Perez handed Jean a piece of paper and told him to sign it, and Jean complied; that he never told Perez that he knew the plaques contained drugs; and that he could not understand English very well and did not ask for an interpreter because he did not know this was an option.  (Cr DE# 82, p. 39, 80).  Even if Jean had testified at the suppression hearing, no showing has been made that such testimony would have resulted in suppression of the evidence.

Even if Jean had testified as he did during trial, this court finds that the movant was not deprived of fair suppression hearing nor that his testimony would not have changed the outcome of the hearing.  The magistrate judge expressed at length that he found Perez's statement that he <u>Mirandized</u> Jean and obtained his waiver before questioning credible.  It is unlikely that the court would have accepted Jean's explanation of how his signature ended up on the waiver form.  Thus, the movant cannot satisfy the prejudice prong of <u>Strickland</u> and is entitled to no relief on the claim.

> **Claim 2**:  Ineffective assistance of trial counsel for failing to present evidence at trial to support Jean's defense that he was duped.

In his affidavit, Jean alleges the following facts in support of claim 2.  After his arrest he met a Haitian inmate, Yvener

Montale, who was arrested at the Miami International Airport for transporting cocaine into the country inside a pair of shoes. (Cv DE# 3, ¶4-5). Montale received the shoes in Haiti and was directed to deliver the shoes to Big Dog. (Id. ¶5). When he arrived at the airport, he met Big Dog. (Id. ¶5). Once the two made contact, Agent Perez arrived and arrested Montale and Big Dog, however, Big Dog was released. (Id. ¶5). Jean asked his attorney, Sowmya Bharathi, to investigate whether Big Dog was working with law enforcement to entrap unwitting travelers from Haiti with cocaine. (Id. ¶6). In addition, Jean also expressed his desire to call Big Dog as a witness in his criminal trial. Bharathi was also representing Montale at the time. (Id. ¶7). After Jean asked her to investigate, she delegated Montale's case to another attorney and forbade Jean from discussing his case with Montale. (Id.). Bharathi never investigated Big Dog, interviewed Montale, or cross-examined Agent Perez about his relationship with Big Dog. (Id. ¶12).

Jean argues that Bharathi's actions constituted deficient performance. In addition, Jean asserts that he was prejudiced because an investigation "into the frequency [with] which Big Dog's confederates in Haiti [gave] cocaine filled artifacts to an unwitting courier to give to Big Dog, and the courier was arrested by Agent Perez, would have supported [his] defense that [he] was an unknown player in their game." (Id. ¶13). In addition, Jean argues that "had the information about Big Dog and Agent Perez's association come to light before the jury, coupled with . . . Agent Perez's inconsistent documentation and presentation of the evidence, the result of the proceedings probably would have been different." (Id. ¶14).

The government counters that Jean's unsupported assertions are

18

insufficient to establish ineffective assistance of trial counsel. The government notes that there is no record of Big Dog's acting as an informant for law enforcement in Jean's case or in any other case.  The government also argues that Jean cannot show prejudice because even if Big Dog had testified, his testimony would not undermine Jean's admission to Perez that he was aware that the plaques contained cocaine.

In this case, the government introduced Jean's statement to Perez wherein he admitted that he became aware that the plaques contained drugs when Jeanty Innocent gave him the plaques in Haiti. (Cr DE# 94, p. 100-03).  Assuming counsel's failure to elicit Big Dog's testimony constituted deficient performance, Jean cannot establish prejudice.  If Big Dog testified that he told Jeanty to give Jean the cocaine-filled plaques and to direct Jean to bring to plaques to Miami and deliver them to Big Dog, the testimony would not have contradicted Jean's statement to Perez that he boarded the plane with a carry-on bag containing drug-filled wooden plaques. Under these circumstances, the movant has failed to establish prejudice pursuant to <u>Strickland</u> and is thus entitled to no relief on the claim.

> **Claim 3:**   Ineffective assistance of trial counsel for failing to provide <u>conflict</u>-free representation.

Jean argues that Bharathi represented him despite a conflict of interest caused by her representation of Montale, another defendant who was allegedly tricked by Big Dog into transporting cocaine into Miami.  The government counters that Jean's allegations are unsupported as, according to the docket, Bharathi was not involved in Montale's criminal case (07-20140-CR-COOKE).

The Sixth Amendment to the United States Constitution

guarantees that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense which includes two correlative rights, "the right to be represented by counsel of choice" and "the right to a defense conducted by an attorney who is free from conflicts of interest." See United States v. Ross, 33 F.3d 1507, 1523 (11 Cir. 1994); see also, Wood v. Georgia, 450 U.S. 261, 271 (1981). However, it is well settled that joint representation does not, in itself, violate this guarantee. Holloway v. Arkansas, 435 U.S. 475 (1978); United States v. Benavidez, 664 F.2d 1255, 1258-59 (5 Cir. 1982).

A movant claiming that counsel labored under a conflict of interest in violation of the Sixth Amendment must demonstrate that: (1) his attorney had an actual, not speculative, conflict of interest, and (2) the  conflict adversely affected counsel's performance. United States v. Novaton, 271 F.3d 968, 1010-1011 (11 Cir. 2001), citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980); accord, United States v. Ettinger, 344 F.3d 1149, 1161 (11 Cir. 2003). A defendant who fails to show both an actual conflict and an adverse affect is not entitled to relief. United States v. Novaton, 271 F.3d 968, 1010 (11 Cir. 2001); Burden v. Zant, 24 F.3d 1298, 1305 (11 Cir. 1994).

The Eleventh Circuit has adopted a test to distinguish actual from potential conflicts in the context of joint representation of codefendants. The movant must "point to specific instances in the record to suggest an actual conflict or impairment of their interests, make a factual showing of inconsistent interests, and demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical."

<u>Barham v. United States</u>, 724 F.2d 1529, 1532 (11 Cir.), <u>cert. den'd</u>, 467 U.S. 1230 (1984); <u>see also, Porter v. Wainwright</u>, 805 F.2d 930, 939-40 (11 Cir. 1986); <u>see e.g.</u>, <u>Turnquest v. Wainwright</u>, 651 F.2d 331, 333 (5 Cir. 1981); <u>Freund v. Butterworth</u>, 165 F.3d 839, 859 (11 Cir. 1999), <u>quoting</u>, <u>Smith v. White</u>, 815 F.2d 1401, 1405 (11 Cir. 1987).

Once a defendant demonstrates that a conflict of interest actually affected his representation, he need not demonstrate prejudice to obtain relief. <u>Novaton</u>, <u>supra</u> at 1010. Rather, "[p]rejudice is presumed...if the defendant demonstrates that ... 'an actual conflict of interest adversely affected his lawyer's performance.'" <u>Strickland</u>, 466 U.S. at 692, <u>quoting</u>, <u>Cuyler</u>, 466 U.S. at 358; <u>Burden v. Zant</u>, 24 F.3d 1298 (11 Cir. 1994); <u>Porter v. Singletary</u>, 14 F.3d 554 (11 Cir. 1994).

In this case, the movant needs to first establish an actual conflict. Jean provides no evidence to support his assertion that an actual conflict of interest existed.  In Montale's case (07-cr-20140-MGC-1), the court appointed the Federal Public Defender's Office to represent him. (07-cr-20140 DE# 5).  Several days after Mondale was indicted, the FPD filed a motion to withdraw.  (07-cr-20140 DE# 8-9).  The court entered an order granting the motion to withdraw and appointing Leonardo Spitale, who represented Montale from that point on. (07-cr-20140 DE# 12). There is no evidence that Bharathi, or any other FPD attorney, represented Mondale.

In addition, Jean fails to show how Bharati's representation of Mondale in a separate proceeding would cause a conflict, even assuming Mondale transported cocaine for Big Dog.  Because Jean fails to present any evidence, other than his conclusory

allegations, that an actual conflict of interest existed between the movant and his attorney, there is no need to determine whether his attorney's performance was "adversely affected" by the conflict.  Under these circumstances, the movant cannot prevail on this claim.

> **Claim 4:** Ineffective assistance of appellate counsel for failing to argue that the government's misconduct deprived Jean of a fair trial.

Jean asserts that his appellate counsel was ineffective in failing to argue that the government violated his constitutional rights by misrepresenting various facts throughout the proceedings. The government counters that Jean's allegations are conclusory and unsupported by the record and that Jean fails to establish prejudice.

Jean first argues that the prosecution misrepresented the facts regarding whether Jean could read English.  During the suppression hearing, Perez testified: "I asked the defendant if he spoke English, and he said yes in English.  I asked him if he read English.  He has told me I don't." (Cr DE# 58, p. 19).  On direct examination at trial, Perez testified, "I asked him if he spoke English, and he indicated he did.  And I asked him if he was able to read English.  He also indicated yes." (Cr DE# 94, p. 93-94). Jean appears to assert that his appellate counsel should have argued that in presenting Perez's contradictory testimony regarding whether Jean could read English, the government deprived him of a fair trial.  Such an argument is without merit.  When a witness contradicts a prior sworn statement during the witness' trial testimony, it does not deprive the defendant of his constitutional right to a fair trial.  Under these circumstances, defense counsel is entitled to highlight the contradiction during cross

examination.   Fed. R. Evid. 613.   In this case, Jean's trial counsel did just that.   Counsel asked Perez whether he testified on direct that Jean informed him that he could read English and Perez answered in the affirmative.   Defense counsel then read the portion of Perez's testimony at the suppression hearing wherein he stated that Jean said he did not read English.   (Id. at 119-23).   When presented with his contradictory testimony, Perez stated that he misspoke during the suppression hearing.   (Id. at 123).

Jean next alleges that the government misrepresented the facts regarding the circumstances surrounding his receipt of the plaques in Haiti.   Jean appears to take issue with Perez's testimony regarding who was present when Jean received the plaques.   During the suppression hearing Perez testified on direct examination that Jean "said that the four plaques were given to him by two individuals that were introduced to the defendant by Jeantys Innocent." (Cr DE# 58, p. 27).   On cross examination, the following exchange took place:

> Defense Counsel: [W]e had discussed how the only statement that you put in [your report] was this one statement that he got the narcotics from Mr. Innocent, correct?
> Perez: Correct.
> Defense Counsel: What he actually told you was that he received the plaques from two other unknown individuals from Haiti; isn't that right?
> Perez: Along with Jeantys, yes.
> Defense Counsel: But those are statements that aren't entirely accurate, would you say?
> Perez: Jeantys was there too.

(Id. at 51).   At trial Perez testified that Jean told him that he "was given the plaques by two other individuals who were introduced to Mr. Jean by Jeantys Innocent.   And Jeantys was also there when the plaques were given to Jean."(Cr DE# 94, p. 101).   The government did not misrepresent the facts.   The first time Perez

explained the substance of Jean's statement, Perez did not expressly state that Innocent was present when Jean received the plaques. Perez's initial omission of this fact did not result in a violation of Jean's constitutional rights or create an appealable issue.

The discrepancies in Perez's testimony do not undermine the evidence of Jean's guilt. The government introduced evidence that Jean attempted to import cocaine in his carry-on bag inside wooden plaques and that Jean admitted that he knew the plaques contained drugs. Therefore, Jean fails to establish that appellate counsel's actions resulted in prejudice.

Because Jean's constitutional right to a fair trial was not violated under any of the above circumstances, appellate counsel's failure to raise an issue on appeal without legal merit was not deficient, nor did it cause prejudice. See Strickland, 466 U.S. 668.

## IV. Conclusion

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 28th day of July, 2010.

UNITED STATES MAGISTRATE JUDGE

```
cc:  Eddy Jean
     Reg. No. 78355-004
     YAZOO CITY LOW
     FEDERAL CORRECTIONAL INSTITUTION
     Inmate Mail/Parcels
     P.O. BOX 5000
     YAZOO CITY, MS 39194

     Sharad Anand Motiani
     Anne Ruth Schultz
     United States Attorney's Office
     99 NE 4 Street
     Miami, FL 33132
```